VANCE L. WADLEIGH, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 10783–07L.          Filed June 15, 2010.

R issued a notice of intent to levy on P's pension income to
collect P's unpaid Federal income tax for 2001. P timely
requested a hearing under sec. 6330, I.R.C. At the hearing P
argued: (1) His liability for the unpaid 2001 Federal income
tax was discharged in his 2005 bankruptcy; (2) the notice of
intent to levy was invalid because his pension was not yet in
payout status; and (3) a prior notice of levy for a similar
amount of unpaid tax was issued and later released. R's Office
of Appeals determined that the proposed levy could proceed.
P contends the Appeals Office abused its discretion. *Held*: The
sec. 6321, I.R.C., lien that attached to P's interest in his pen-
sion was not discharged by his 2005 bankruptcy because his
interest in his pension was excluded from his bankruptcy
estate pursuant to 11 U.S.C. sec. 541 (2006). *Held*, *further*,
although P's discharge in bankruptcy relieved him of personal
liability for the unpaid 2001 Federal income tax, the discharge
does not prevent R from collecting P's unpaid 2001 Federal
income tax in rem by levy on P's pension income, notwith-
standing R's failure to file a valid notice of Federal tax lien
with respect to the 2001 Federal income tax liability. *Held*,
*further*, although R may not enforce a levy on P's interest in
his pension until the pension enters payout status, R's notice
of intent to levy is not invalid merely because it was mailed
to P 9 months before P's pension entered payout status. *Held*,

*further*, R's release of a prior levy does not release the sec. 6321, I.R.C., lien that R held with respect to P's interest in his pension. *Held*, *further*, R's Office of Appeals verified that the requirements of any applicable law and administrative procedure had been satisfied and considered all of P's arguments. However, because the Appeals Office assumed that P's wage income would continue after P started receiving his pension without any support in the administrative record for the assumption, we shall exercise our discretion to remand this case to the Appeals Office for further proceedings.

*John A. Strain*, for petitioner.
*Spencer T. Stowe*, for respondent.

OPINION

MARVEL, *Judge*: Pursuant to section 6330(d),[1] petitioner seeks review of respondent's determination to sustain a proposed levy on petitioner's interest in his pension. The levy relates to petitioner's unpaid 2001 Federal income tax liability. The issue for decision is whether respondent abused his discretion when he sustained the proposed levy. To resolve this issue, we must first decide whether a section 6321 lien that was not perfected by the filing of a valid notice of Federal tax lien (NFTL) may be enforced by a levy on petitioner's pension income after petitioner's personal liability for the unpaid tax has been discharged in bankruptcy.

*Background*

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts is incorporated by this reference. On the date he filed his petition, petitioner resided in California.

On June 28, 2002, respondent recorded an NFTL purportedly relating to petitioner's 2001 tax liability. When the NFTL was recorded, petitioner had not yet filed his 2001 Federal income tax return. In fact, respondent intended to issue the NFTL with respect to petitioner's 2000 Federal income tax liability but identified the wrong year (2001) on the NFTL and recorded it in error.[2] Respondent has since withdrawn the NFTL. The record contains no evidence that respondent

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioner's 2000 Federal income tax liability is not at issue.

recorded any other NFTL with respect to petitioner's 2001 tax liability.

On or about August 16, 2002, petitioner filed a 2001 Form 1040, U.S. Individual Income Tax Return. Petitioner reported a balance due on the return but did not pay the balance when he filed the return. On September 16, 2002, respondent assessed the tax shown on the return, an addition to tax for failure to pay timely, an addition to tax for failure to pay estimated tax, and interest. Petitioner has not paid the resulting liability (collectively, the 2001 tax liability).

On August 18, 2005, petitioner and his wife, Linda Wadleigh, filed a voluntary chapter 7 bankruptcy petition in the U.S. Bankruptcy Court for the Central District of California. On Schedule B, Personal Property, of the bankruptcy petition, petitioner listed his interest in his Honeywell Pension Plan account (pension). However, on Schedule C, Property Claimed as Exempt (schedule C), of the bankruptcy petition, petitioner claimed the pension was exempt property. Petitioner included the following statement on schedule C:

The interest in the Honeywell Pension Plan is claimed as exempt to the extent, if any, that said Pension Plan is property of the estate, and the claims of exemption include any increases in the value of Debtors' interests therein. Debtors contend that their interest in the Honeywell Plan are [sic] excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2); *Patterson v. Shumate*, 504 U.S. 753 (1992).

As reflected on schedule C, petitioner claimed his interest in the pension was excluded from the bankruptcy estate pursuant to 11 U.S.C. sec. 541(c)(2) (2006), which provides: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a [bankruptcy] case", as interpreted in *Patterson v. Shumate*, 504 U.S. 753, 758–759 (1992).[3] Alternatively, petitioner claimed the pension was

---

[3] In *Patterson v. Shumate*, 504 U.S. 753, 758–759 (1992), the Supreme Court held that a debtor's interest in a pension plan which is subject to the antialienation provision of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93–406, sec. 206(d)(1), 88 Stat. 864 (current version at 29 U.S.C. sec. 1056(d)(1) (2006)), is a beneficial interest in trust that is subject to a restriction on transfer enforceable under applicable nonbankruptcy law, and therefore a debtor may exclude his interest in the ERISA-qualified pension plan from his bankruptcy estate under 11 U.S.C. sec. 541(a)(1) and (c)(2) (2006). For purposes of this Opinion and consistent with the Supreme Court's opinion in *Patterson v. Shumate*, *supra*, the phrase "ERISA-qualified pension plan" means a qualified plan that contains the antialienation clause required for qualification under ERISA sec. 206(d)(1), 29 U.S.C. sec. 1056(d)(1). See *In re Baker*, 114 F.3d 636, 638 (7th Cir. 1997).

exempt property under 11 U.S.C. sec. 522(b)(2) (2006) and Cal. Civ. Proc. Code sec. 703.140(b)(10)(E) (West 2009),[4] if and to the extent the pension was properly includable in the bankruptcy estate.

When petitioner filed for bankruptcy, he was fully vested in his pension, but the pension was not yet in payout status and did not contain a lump-sum or similar option that would have permitted petitioner to withdraw funds from the pension before reaching retirement age. Petitioner's right to receive monthly payments of $1,242.13 under the pension matured on November 1, 2007.

On December 8, 2005, petitioner received a discharge in the bankruptcy case. Petitioner's 2001 Federal income tax liability was included in the discharge.

On August 31, 2006, respondent mailed petitioner a notice of intent to levy on petitioner's pension income to collect petitioner's unpaid 2000 Federal income tax liability. On November 16, 2006, however, respondent withdrew the notice of intent to levy.

On January 29, 2007, more than 9 months before petitioner's pension entered payout status, respondent mailed petitioner a Final Notice—Notice of Intent to Levy and Notice of Your Right to a Hearing (notice of intent to levy)

---

[4] Both State and Federal law limit the amount a debtor may exempt. In addition, States may opt out of the Federal exemption scheme, thereby limiting debtors who file for bankruptcy in those States to the exemptions provided under relevant State law. 11 U.S.C. sec. 522(b)(2); *Greene v. Savage*, 583 F.3d 614, 618 (9th Cir. 2009).

Pursuant to 11 U.S.C. sec. 522(b)(2), California has opted out of the exemption scheme provided in the Bankruptcy Code. Cal. Civ. Proc. Code sec. 703.130 (West 2009). However, California has enacted an exemption scheme that mirrors 11 U.S.C. sec. 522(d)(10)(E) with respect to pension and profit-sharing plans. See Cal. Civ. Proc. Code sec. 703.140(b)(10)(E) (West 2009), which provides:

The following exemptions may be elected as provided in subdivision (a):

\*     \*     \*     \*     \*     \*     \*

(10) The debtor's right to receive any of the following:

\*     \*     \*     \*     \*     \*     \*

(E) A payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless all of the following apply:

(i) That plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under the plan or contract arose.

(ii) The payment is on account of age or length of service.

(iii) That plan or contract does not qualify under Section 401(a), 403(a), 403(b), 408, or 408A of the Internal Revenue Code of 1986.

with respect to petitioner's 2001 tax liability. The notice of intent to levy stated in pertinent part as follows:

You have received a discharge under Chapter 7 of the Bankruptcy Code. Thus, you are relieved from personal liability for the following tax liabilities:

| Kind of tax | Period | Amount including penalties and interest |
|---|---|---|
| 1040–Income | 12/31/2001 | $57,805.33 (As of 08–30–2007) |

However, at least one Notice of Federal Tax Lien for the above tax liabilities was properly filed before your bankruptcy. Despite your relief from personal liability, the federal tax liens remain attached to your prepetition property, and the IRS is permitted to take collection action, based on these federal tax liens, against your prepetition property at any time within the period permitted by law for collection of the tax. Also, the Service can pursue administrative collection from property excluded from the Bankruptcy estate based solely on its statutory lien.

This letter is your notice of our intent to levy against prepetition property under Internal Revenue Code (IRC) section 6331 and your right to receive Appeals consideration under IRC section 6330.

Prepetition property is property that you held prior to your bankruptcy filing that was not sold or liquidated by the Chapter 7 trustee for the payment of your debts. Prepetition property includes three types of property: (1) property you *exempted* from the bankruptcy estate under section 522 of the Bankruptcy Code; (2) property *abandoned* by the bankruptcy trustee under section 554 of the Bankruptcy Code; and (3) property *excluded* from the bankruptcy estate under applicable law, as opposed to property you exempted from the bankruptcy estate. An example of excluded property is an interest in a section 401(k) plan or other employer-sponsored plan that meets the requirements of the Employee Retirement Income Security Act of 1974 (ERISA). * * *

Although the notice of intent to levy does not expressly identify the pension, the parties have stipulated that the pension is the prepetition property on which respondent plans to enforce his levy. Neither party disputes that the pension is to be paid pursuant to a qualified plan under the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93–406, 88 Stat. 829, or that the plan is subject to the antialienation provision of ERISA sec. 206(d)(1), 88 Stat. 864 (current version at 29 U.S.C. sec. 1056(d)(1) (2006)).

On or about February 12, 2007, petitioner timely filed a Form 12153, Request for a Collection Due Process Hearing, objecting to the proposed levy. Petitioner did not challenge the existence or amount of the 2001 tax liability. Instead, petitioner raised five contentions relating to the appropriateness of respondent's proposed collection action: (1) Respondent had issued a levy notice for a similar amount on August 31, 2006, and released the levy on November 16, 2006; (2) the notice of intent to levy referenced the same retirement payments addressed in the November 16, 2006, release and was inconsistent as to the tax year and amount due;[5] (3) petitioner had not received an analysis regarding what property, if any, secured respondent's claim on petitioner's discharged taxes; (4) because petitioner's pension was not property to which petitioner was entitled at the time of the bankruptcy filing, the pension was not property to which respondent's lien could attach; and (5) petitioner's liability for the unpaid 2001 Federal income tax was discharged in bankruptcy on December 8, 2005.

Adlai Climan (Mr. Climan), a settlement officer in the Internal Revenue Service (IRS) Office of Appeals, was assigned to handle petitioner's section 6330 hearing. During a conversation with Mr. Climan that was part of the hearing process, petitioner argued that respondent could not levy on petitioner's pension income because his 2001 tax liability was discharged in bankruptcy and respondent had released a similar levy on petitioner's interest in his pension.[6] Petitioner did not propose any collection alternatives, such as an offer-in-compromise or an installment agreement, or provide any financial information, such as a Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals.[7]

After his conversation with petitioner, Mr. Climan reviewed Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for petitioner's 2001 taxable

---

[5] Page 1 of the notice of intent to levy states that the amount due, including additions to tax and interest, was $57,805.33 as of Aug. 30, 2007, and page 3 states that the total amount owed as of May 29, 2006, was $71,016.86. Petitioner asserts the notice is inconsistent with transcripts respondent mailed to him in December 2006.

[6] The record does not disclose when the conversation occurred, nor does it indicate whether the conversation was by telephone or in person.

[7] Petitioner maintains he was never asked to provide financial information. Respondent counters that petitioner was asked for such information. Regardless, the parties do not dispute that petitioner did not submit financial information during the sec. 6330 hearing.

year, reviewed financial information contained in petitioner's 2003–2005 Federal income tax returns, and consulted the applicable national and local standards. From this information Mr. Climan calculated petitioner's ability to pay the 2001 tax liability. In making his calculations Mr. Climan assumed that petitioner would continue to work for the same compensation he had earned in 2005. Mr. Climan calculated petitioner's monthly income by dividing the wage income reported on petitioner's 2005 return by 12. From his calculations Mr. Climan determined: (1) "[Petitioner] has more than sufficient income to live on [and] attachment of the pension income will not create a financial hardship"; (2) the proposed levy was necessary for payment of the subject liability; and (3) the proposed levy would balance the Government's need to collect the tax with petitioner's legitimate concern that any collection action be no more intrusive than necessary. Accordingly, Mr. Climan determined that the proposed levy should be sustained.

On April 10, 2007, the Office of Appeals issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) sustaining the proposed levy. The notice of determination was accompanied by an "Appeals Case Memo" (memorandum) in which the Appeals Office briefly explained its decision. With respect to the filing of an NFTL, the memorandum stated as follows:

> Notices of Federal Tax Lien were filed as follows:
>
> |  | *Date recorded* |
> |---|---|
> | 2000: | 5/25/05 |
> | 2001: | 7/18/02* |
>
> \* ***A severe error has been committed by Collection as regards this NFTL.*** This NFTL actually pertains to the year 2000, but the employee filing the lien * * * apparently entered the wrong year in the computerized request. The assessment date on this NFTL for 2001 shows as 11/26/2001. This is the assessment date for the 1040–*2000* (see above). This NFTL for 2001 shows a recording date (7/18/02) prior to the assessment date (9/16/02) of the return for 2001. **This NFTL is to be withdrawn, or corrected to properly show the year 2001, as it was improperly filed.** This, however, is not the subject of this CDP hearing.

In the section of the memorandum devoted to specific issues, the Appeals Office provided the following explanation regarding its conclusion that respondent may pursue petitioner's pension:

the government may not attach any of Wadleigh's future earnings or assets he has retained after the bankruptcy discharge for the years 2000 and 2001.

The government, however, is not precluded from attaching (or levying) assets **excluded** from the bankruptcy, in this case, Wadleigh's pension plan. See 11 USC section 541; certain retirement savings accounts or pension plans may be excluded from the bankruptcy estate.

This issue has been discussed in 2006 TNT 167–19, and IRM 5.9.2.9.1.1 in that it is not even required that a Notice of Federal Tax Lien be filed for the government to be allowed to proceed in this fashion (NFTLs *were* filed in Wadleigh's case). Thus, the government may proceed against Wadleigh's pension income for both of the years 2000 and 2001, and the issuance of the Letter 4066 regarding 2001 is appropriate.

Petitioner timely filed a petition with this Court asking us to review the Appeals Office's determination.

## *Discussion*

### I. *Section 6330*

The Commissioner may not levy on a taxpayer's property or rights to property unless he has first notified the taxpayer in writing of his right to request a hearing under section 6330. Sec. 6330(a). If the taxpayer requests a hearing under section 6330(a) (hereinafter hearing), the hearing shall be conducted by an impartial officer or employee of the IRS Office of Appeals. Sec. 6330(b)(1), (3). At the hearing the taxpayer may raise any relevant issue relating to the Commissioner's proposed collection activity, including (1) appropriate spousal defenses, (2) challenges to the appropriateness of collection action, and (3) offers of collection alternatives. Sec. 6330(c)(2)(A); *Sego v. Commissioner*, 114 T.C. 604, 609 (2000); *Goza v. Commissioner*, 114 T.C. 176, 180 (2000). The taxpayer may challenge the existence or amount of the underlying tax liability only if the taxpayer did not receive a notice of deficiency for such liability or did not otherwise have an opportunity to dispute the liability. Sec. 6330(c)(2)(B).

Following a hearing, the Appeals Office must issue a notice of determination regarding the validity of the proposed collection action. In making the determination the Appeals Office must take into consideration: (1) Verification presented by the Secretary that the requirements of applicable

law and administrative procedure have been met; (2) relevant issues raised by the taxpayer; and (3) whether the proposed collection action appropriately balances the need for efficient collection of taxes with the taxpayer's legitimate concerns regarding the intrusiveness of the proposed collection action. Sec. 6330(c)(3).

## II. *Standard of Review*

We have jurisdiction to review a notice of determination. Sec. 6330(d)(1). If the validity of the underlying tax liability was properly at issue in the hearing, we review the determination regarding liability de novo. *Sego v. Commissioner*, *supra* at 610; *Goza v. Commissioner*, *supra* at 181–182. We review any other determination for abuse of discretion. *Sego v. Commissioner*, *supra* at 610; *Goza v. Commissioner*, *supra* at 182. A determination will not constitute an abuse of discretion unless it is arbitrary, capricious, or without sound basis in fact or law. See *Swanson v. Commissioner*, 121 T.C. 111, 119 (2003) (if Commissioner's determination based on erroneous legal interpretation, determination may be set aside as abuse of discretion); *Woodral v. Commissioner*, 112 T.C. 19, 23 (1999).

Petitioner did not challenge the existence or amount of his 2001 tax liability at his hearing or at trial. However, he does challenge the determination to proceed with collection. In challenging the determination petitioner has raised several issues that require us to decide the legal effect of the section 6321 statutory lien during and after a bankruptcy proceeding and related legal questions. When we are faced with a question of law, the standard of review has no impact on our analysis because under either standard an erroneous legal determination must be rejected. *Kendricks v. Commissioner*, 124 T.C. 69, 75 (2005); *Swanson v. Commissioner*, *supra* at 119. Even if we characterize the applicable standard of review as abuse of discretion, we do not uphold a discretionary determination that is infected by a material error of law. *Kendricks v. Commissioner*, *supra* at 75; *Swanson v. Commissioner*, *supra* at 119.

III. *Scope of Review*

When reviewing a notice of determination for abuse of discretion under section 6330(d), we have held that in some circumstances we may consider evidence that was presented at trial but was not included in the administrative record. *Robinette v. Commissioner*, 123 T.C. 85, 101 (2004), revd. 439 F.3d 455, 460–462 (8th Cir. 2006). Respondent invites us to overrule our Opinion in *Robinette* and limit our review to the administrative record. We decline respondent's invitation to overrule our holding in *Robinette* because the scope of review does not materially affect the outcome at this time, given our conclusion to remand this case for further proceedings.

IV. *Bankruptcy, the Section 6321 Lien, and the Section 6331 Levy*

Before turning to our review of respondent's notice of determination, we must first examine the scope of the section 6321 lien, the effect of a discharge in bankruptcy on an otherwise valid section 6321 lien where the Commissioner fails to file a valid NFTL, and the Commissioner's ability to levy pursuant to section 6331 on property that is subject to a section 6321 lien, in order to determine whether respondent may levy on petitioner's interest in his pension.

A. *Section 6321*

If any person liable to pay any tax neglects or refuses to pay the tax upon notice and demand, the amount of the tax (together with any costs, penalties, and interest) shall be a lien in favor of the United States on all property and rights to property belonging to the taxpayer. Sec. 6321; sec. 301.6321–1, Proced. & Admin. Regs. A person's liability to pay a tax is established by assessment, which is the formal recording of a liability in the records of the Commissioner. Secs. 6201, 6203. The notice and demand requirement in section 6321 refers to the action required by section 6303, which provides that the Commissioner, as soon as practicable and within 60 days of assessment, must provide written notice, stating the amount of the liability and demanding payment thereof, to each person liable for the unpaid tax.

When a taxpayer fails to pay an assessed tax liability after receiving a notice and demand for payment, the section 6321

lien arises by operation of law and continues until the liability is satisfied or becomes unenforceable by lapse of time. [8] Sec. 6322. The section 6321 lien attaches to all property and rights to property belonging to the taxpayer, including property acquired by the taxpayer after the lien arises. Sec. 6321; *Glass City Bank v. United States*, 326 U.S. 265, 268–269 (1945). An unqualified right to receive property in the future is itself a property right to which the section 6321 lien attaches. See *United States v. Natl. Bank of Commerce*, 472 U.S. 713, 725 (1985); *Connor v. United States*, 27 F.3d 365, 366 (9th Cir. 1994). However, the section 6321 lien is not valid against a purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until an NFTL has been filed. Sec. 6323(a).

Petitioner filed a 2001 Federal income tax return on August 16, 2002, that showed a Federal income tax liability and a balance due. Respondent assessed the liability and issued a timely notice and demand for payment on September 16, 2002. By reason of the above, a section 6321 lien attached to all of petitioner's property, including his pension income, notwithstanding that the pension had not yet entered payout status. See sec. 6321. However, respondent never filed a valid NFTL with respect to petitioner's 2001 Federal income tax liability. Respondent concedes the 2001 NFTL was recorded in error and withdrawn, and we infer from the record that respondent did not subsequently file a valid NFTL with respect to the 2001 tax liability. We find, therefore, that respondent has only a section 6321 lien with respect to petitioner's 2001 tax liability.

## B. *The Effect of Bankruptcy on a Section 6321 Lien*

The purpose of bankruptcy is to give the debtor a fresh start by discharging many of the debtor's liabilities. *Carlson v. Commissioner*, 116 T.C. 87, 101 (2001). When a bankruptcy court enters a discharge order in a bankruptcy proceeding, the debtor is discharged from personal liability for all dischargeable debts. 11 U.S.C. sec. 524(a) (2006). However, liens and other secured interests generally survive bankruptcy. *Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991).

---

[8] The sec. 6321 lien is sometimes called a "secret lien" because it arises by operation of law without any public filing requirement. *Hult v. Commissioner*, T.C. Memo. 2007–302.

Thus, a discharge in bankruptcy will not necessarily prevent the postdischarge enforcement of a valid prepetition lien on any prepetition property of the debtor that survived the bankruptcy. *Isom v. United States*, 901 F.2d 744, 745 (9th Cir. 1990). "[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*." *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991); *Iannone v. Commissioner*, 122 T.C. 287, 292–293 (2004). We must examine whether petitioner's pension interest was prepetition property that survived the bankruptcy and whether the section 6321 lien that was not perfected by the filing of a valid NFTL is a valid prepetition lien that survived the bankruptcy.

The filing of a petition in bankruptcy automatically creates a bankruptcy estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. sec. 541(a)(1) (2006). The bankruptcy estate includes all of the debtor's prepetition property and rights to property except property excluded from the estate under 11 U.S.C. sec. 541 (2006). Title 11 U.S.C. sec. 541(c)(2), as interpreted in *Patterson v. Shumate*, 504 U.S. at 760,[9] permits a debtor to exclude an interest in an ERISA-qualified pension plan from his bankruptcy estate.[10]

---

[9] In *Patterson v. Shumate*, 504 U.S. at 762, the Supreme Court held that "a debtor may exclude his interest in an ERISA-qualified pension plan from the bankruptcy estate". The bankruptcy trustee in *Patterson* argued that the Court's holding rendered 11 U.S.C. sec. 522(d)(10)(E) superfluous, but the Court rejected the argument, observing that 11 U.S.C. sec. 522(d)(10)(E) "exempts from the bankruptcy estate a much broader category of interests than * * * [11 U.S.C. sec.] 541(c)(2) excludes."

[10] We have located only one opinion by a Court of Appeals that has addressed the issue of whether the exclusion of an ERISA-qualified pension interest from a bankruptcy estate is mandatory or permissive. In *Rains v. Flinn*, 428 F.3d 893, 905–906 (9th Cir. 2005), the Court of Appeals for the Ninth Circuit held that the exclusion of such a pension from a debtor's bankruptcy estate was permissive rather than mandatory. If exclusion is permissive, then it is logical to assume that the debtor must decide in a bankruptcy proceeding whether the debtor will exclude or exempt an ERISA-qualified pension interest. Excluding or exempting such an interest may have substantially different consequences, particularly with respect to unpaid Federal tax liabilities. See, e.g., Madigan, "Using Unfiled Dischargeable Tax Liens to Attach to ERISA-Qualified Pension Plan Interests After *Patterson v. Shumate*", 14 Bankr. Dev. J. 461, 465 (1998). We note, however, that several courts have held that an ERISA-qualified pension plan that is listed as exempt property on schedule C of the debtor's bankruptcy petition is excluded from a debtor's bankruptcy estate, notwithstanding the debtor's listing of the pension as exempt property. See, e.g., *Ostrander v. Lalchandani*, 279 Bankr. 880, 886 (Bankr. 1st Cir. 2002); *United States v. Rogers*, 558 F. Supp. 2d 774, 787 (N.D. Ohio 2008); *In re Wilson*, 206 Bankr. 808, 809 (Bankr. W.D.N.C. 1996); *Rich v. United States*, 197 Bankr. 692, 695 (Bankr. N.D. Okla. 1996) ("if Debtor's * * * [retirement plan] is ERISA qualified, it is excluded from the bankruptcy estate."), affd. per order (N.D. Okla., Jan. 9, 1998); *In re Hanes*, 162 Bankr. 733, 741 (Bankr. E.D.

Continued

Title 11 U.S.C. sec. 522 allows a debtor to exempt from his bankruptcy estate a personal residence, a car, certain property used in a trade or business, retirement funds, and certain other assets, to ensure that the debtor has at least some property with which to make a fresh start. *Carlson v. Commissioner*, *supra* at 102. Exempt property initially is part of the debtor's bankruptcy estate, see *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642 (1992), but is removed from the bankruptcy estate (and is therefore unavailable to satisfy creditors' claims) for the benefit of the debtor as a result of the debtor's exemption, *Pasquina v. Cunningham*, 513 F.3d 318, 323 (1st Cir. 2008). Property that is exempt from the bankruptcy estate pursuant to 11 U.S.C. sec. 522 is not available to satisfy prepetition debts during or after the bankruptcy, except debts secured by liens that are not avoided in the bankruptcy and *section 6321 liens with respect to which an NFTL has been filed*. 11 U.S.C. sec. 522(c).

Unlike exempt property, which is part of a debtor's bankruptcy estate but is unavailable to satisfy creditors' claims, excluded property never becomes part of the bankruptcy estate and is therefore never subject to the bankruptcy trustee's or the debtor's power to avoid the section 6321 lien. See *U.S. IRS v. Snyder*, 343 F.3d 1171, 1178–1179 (9th Cir. 2003); *Traina v. Sewell*, 180 F.3d 707, 710 (5th Cir. 1999). Thus, if a section 6321 lien on excluded property has not expired or become unenforceable under section 6322, it survives the bankruptcy.[11]

Petitioner was granted a discharge in bankruptcy on December 8, 2005. The discharge included petitioner's 2001 tax liability. On schedule C of his bankruptcy petition, petitioner contended that his pension was excluded from the bankruptcy estate pursuant to 11 U.S.C. sec. 541(c)(2) and *Patterson v. Shumate*, 504 U.S. 753 (1992). Alternatively petitioner claimed that his pension was exempt property, but only if and to the extent that his pension was includable in the bankruptcy estate. On the basis of the record before us and our review of 11 U.S.C. sec. 541, we conclude that peti-

Va. 1994). We also note that there is no formal procedure within the bankruptcy process to clarify what property is excluded. At least one court has commented on the confusion that results from this lack of clarity. See *In re Stevens*, 177 Bankr. 619, 620 n.2 (Bankr. E.D. Ark. 1995).

[11] The Commissioner has taken the position that "A Notice of Federal Tax Lien need not be on file to pursue collection against assets excluded from the bankruptcy estate." Internal Revenue Manual (IRM) pt. 5.9.2.9.1.1(2) (Mar. 1, 2007).

tioner's pension was properly excludable from his bankruptcy estate under 11 U.S.C. sec. 541(c)(2) and *Patterson v. Shumate*, *supra* at 765, and that petitioner excluded the pension from his bankruptcy estate. As a result, the section 6321 lien that attached to the pension before bankruptcy continued to attach to petitioner's interest in his pension even after petitioner's personal liability for his 2001 tax liability was discharged in bankruptcy.

C. *Section 6331*

Section 6331(a) provides:

SEC. 6331(a). AUTHORITY OF SECRETARY.—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax * * * by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien * * * [12]

The notice and demand requirement in section 6331(a) is satisfied if the Commissioner issues a written notice of unpaid tax liability and demand for payment and the notice is given to the taxpayer in person, left at the taxpayer's dwelling or usual place of business, or sent via certified or registered mail to the taxpayer's last known address. Sec. 6331(d).

Once the Commissioner has assessed a Federal tax liability and given the requisite notice, he may collect the unpaid tax by levy on "all property and rights to property" belonging to the taxpayer. See sec. 6331(a). However, the Commissioner must stand in the taxpayer's shoes; he acquires through levy only those property rights that the taxpayer himself possesses. *United States v. Novak*, 476 F.3d 1041, 1062 (9th Cir. 2007). Thus, if the Commissioner levies on a taxpayer's pension, he will receive property from the levy only if the pension is already in payout status or the taxpayer has the right to demand a lump-sum distribution of his pension interest. *Id.*; see also *U.S. IRS v. Snyder*, *supra* at 1175 (IRS cannot, outside bankruptcy, enforce its lien on debtor's interest in ERISA-qualified plan until plan enters payout status).

---

[12] None of the sec. 6334 exemptions is relevant to the instant case.

## V. *Review of Appeals Office's Determination*

### A. *Compliance With Law and Administrative Procedure*

Section 6330(c)(1) requires the hearing officer to obtain verification from the Secretary that the requirements of applicable law and administrative procedure have been met. The record shows that Mr. Climan verified the following: (1) Petitioner had an unpaid Federal income tax liability for 2001; (2) respondent properly assessed petitioner's 2001 tax liability as required by section 6203; (3) respondent timely mailed petitioner a notice and demand for payment as required by section 6303; (4) petitioner neglected or refused to pay his 2001 liability; and (5) respondent mailed petitioner a notice of intent to levy and a notice of his right to request a hearing as required by sections 6330 and 6331(d). Mr. Climan correctly concluded that petitioner's 2001 tax liability had been discharged in bankruptcy and that respondent was barred from attaching any of petitioner's future earnings or postpetition assets to satisfy the 2001 liability. However, Mr. Climan also determined that respondent was not precluded from levying on any prepetition property that was excluded from petitioner's bankruptcy estate (in this case, petitioner's pension).

Petitioner contends that respondent failed to follow applicable law and administrative procedure. Specifically, petitioner argues that respondent failed to follow the step-by-step instructions provided in the Internal Revenue Manual before levying on money accumulated in a pension or retirement plan. See 1 Administration, Internal Revenue Manual (IRM) (CCH), pt. 5.11.6.2, at 16,798–16,801 (Mar. 15, 2005). A review of relevant IRM provisions is instructive in ascertaining the procedures the IRS expects its employees to follow in deciding whether to levy on a taxpayer's interest in a pension plan or other retirement account. [13]

---

[13] Although this Court has held that procedures set forth in the IRM "do not have the force or effect of law" and a failure to adhere to IRM procedures does not rise to the level of a constitutional violation, see, e.g., *Vallone v. Commissioner*, 88 T.C. 794, 807–808 (1987) (checks obtained in violation of IRM not a constitutional violation requiring suppression); *Riland v. Commissioner*, 79 T.C. 185 (1982) (failure to abide by IRM procedures not a violation of due process), and that the IRM does not create enforceable rights for taxpayers, see *Fargo v. Commissioner*, 447 F.3d 706, 713 (9th Cir. 2006), affg. T.C. Memo. 2004–13, sec. 6330(c)(1) specifically requires that the Appeals officer at the sec. 6330 hearing *shall* obtain verification from the Secretary that the requirements of *any* applicable law or *administrative procedure* have been met. Moreover, sec. 6330(c)(3) provides that the determination by an Appeals officer under sec. 6330(c)

The IRM "serves as the single, official source of IRS 'instructions to staff' relating to the administration and operation of the Service." IRM pt. 1.11.2.1.1(1) (Apr. 1, 2007). [14] It "provides a central repository of uniform guidelines on operating policies and procedures for use by all IRS offices." *Id.* Several provisions of the IRM address the Commissioner's ability to levy on retirement income and retirement accounts. 1 Administration, IRM (CCH), pt. 5.11.6.1(1), at 16,797 (June 29, 2001), which applies to levies on retirement *income*, directs IRS employees to "Use discretion before levying retirement income" but provides no specific guidance regarding how that discretion is to be exercised. In contrast, IRM pt. 5.11.6.2, which covers "money accumulated in a pension or retirement plan, as well as Individual Retirement Arrangements (IRAs)" and specifically does not cover "levying retirement income", directs IRS employees to levy on assets accumulated in pension or retirement accounts only after following detailed procedures. *Id.* pt. 5.11.6.2(4)–(12), at 16,799–16,801 (Mar. 15, 2005). [15]

The record establishes that Mr. Climan exercised discretion as directed by IRM pt. 5.11.6.1(1). Although Mr. Climan did not follow the detailed procedures set forth in IRM pt. 5.11.6.2(4)–(12), he was not required to do so. The procedures set forth in IRM pt. 5.11.6.2 apply only to situations in which the Commissioner seeks to levy on money accumulated in pension or retirement accounts; they do not apply to a pro-

---

*shall* take into consideration the verification presented under sec. 6330(c)(1). Because petitioner has questioned whether Mr. Climan followed applicable IRM procedures in making his determination, we examine the IRM procedures. However, because we conclude that the Appeals Office met the verification requirement of sec. 6330(c)(1), we need not and do not decide whether the procedures described in the IRM are administrative procedures that come within the verification requirement of sec. 6330(c)(1).

[14] Before its amendment in 2007, 1 Administration, IRM (CCH) pt. 1.11.2.1(2), at 5,027 (Oct. 10, 2003), stated in pertinent part as follows:

The IRM outlines business rules and *administrative procedures* and guidelines used by the agency to conduct business. It contains policy, direction and delegations of authority that are necessary to carry out IRS responsibilities to administer tax law and other legal provisions. The business rules, operating guidelines and procedures and delegations guide managers and employees in carrying out day to day responsibilities. [Emphasis added.]

[15] With respect to retirement accounts that are excluded from the bankruptcy estate, 1 Administration, IRM (CCH) pt. 5.11.6.2(12), at 16,801 (Mar. 15, 2005), states that the IRS may levy on such accounts to collect taxes discharged in bankruptcy if an NFTL was filed before the bankruptcy, and it instructs employees to consider levying on retirement accounts "if there is no other property that survived the bankruptcy." However, IRM pt. 5.11.6.2(12) also contains the following note: "Where no Notice of Federal Tax Lien was filed before bankruptcy, it is not settled whether the IRS can levy to collect discharged taxes from excluded retirement accounts. Counsel should be consulted in such situations."

posed levy on payments from a pension plan that constitute retirement *income* to the recipient. The proposed levy is directed to petitioner's retirement income. We therefore conclude that the Appeals Office obtained verification that the requirements of all applicable law and administrative procedure had been met in accordance with section 6330(c)(1) and that it considered that verification in making its determination as required by section 6330(c)(3).

B. *Consideration of Petitioner's Arguments*

Petitioner raised five contentions in his Form 12153, which we can condense into three core arguments: (1) Respondent's proposed levy was invalid because a previous levy on petitioner's pension was released; (2) petitioner's 2001 Federal income tax liability was discharged in petitioner's 2005 bankruptcy; and (3) the proposed levy was invalid because it was made before petitioner's pension entered payout status. All three arguments are unavailing.

1. *A Release of Levy Does Not Release the Underlying Lien on Petitioner's Pension.*

Petitioner's first argument confuses the lien that arises under section 6321 with respondent's ability to levy pursuant to section 6331. The lien on petitioner's pension arose when petitioner's 2001 Federal income tax liability was assessed and petitioner failed to pay the liability upon notice and demand. See sec. 6321. The lien was not released when petitioner's 2001 tax liability was discharged in bankruptcy because the pension was excluded from the bankruptcy estate, see *supra* pp. 292–293, nor was the lien released by respondent's withdrawal of any prior levy notices. See sec. 6322.

2. *Petitioner's Discharge in Bankruptcy Did Not Prevent Respondent From Levying on Petitioner's Prepetition Assets That Remained Subject to Respondent's Section 6321 Lien.*

Petitioner's second argument fails because, as discussed above, a discharge in bankruptcy shields a debtor from personal liability with respect to discharged debts but does not prevent the Commissioner from proceeding in rem against

any prepetition assets of the debtor that survived the bankruptcy and remain subject to a valid section 6321 lien. See *supra* pp. 290–293. In the case of exempt property, the section 6321 lien survives the bankruptcy where, pursuant to section 6323(a), the Commissioner filed an NFTL before the bankruptcy; in the case of excluded property, the lien survives the bankruptcy whether or not the Commissioner filed an NFTL. See *supra* pp. 291–293. Because petitioner's pension was excluded from his bankruptcy estate, the section 6321 lien remains attached to the pension, notwithstanding respondent's failure to properly record an NFTL. Accordingly, respondent may collect petitioner's unpaid 2001 tax liability in rem by levying on petitioner's pension income, even though petitioner's personal liability for the unpaid 2001 Federal income tax was discharged in bankruptcy.

### 3. *Respondent's Notice of Levy Was Valid*

We reject petitioner's final argument because respondent did not levy prematurely. In fact, respondent has not yet levied on petitioner's pension income; the only thing respondent has done is to issue a notice of *intent to levy* pursuant to section 6330. Petitioner's argument confuses the notice of intent to levy under section 6330 with the levy itself. Petitioner is correct that respondent could not have withdrawn funds from petitioner's pension until it entered payout status on November 1, 2007. But we are unaware of any authority holding that a notice of intent to levy on pension income that is mailed to a taxpayer pursuant to section 6330 before the pension has entered payout status is improper, let alone invalid, and we can discern no restriction in section 6330 that prevents the Commissioner from issuing a notice of intent to levy once the Commissioner has identified an appropriate levy source, even if the notice of intent to levy is issued before the date when the actual levy may commence to reach payments from the plan (in this case, the date when petitioner's pension enters payout status).

C. *Balancing the Need for Efficient Collection of Taxes With the Taxpayer's Concern That Collection Be No More Intrusive Than Necessary*

Section 6330(c)(3)(C) requires a hearing officer to balance the Commissioner's obligation to collect a validly assessed but unpaid tax liability against a taxpayer's legitimate concern that the collection action may be too intrusive. We review for abuse of discretion the hearing officer's determination regarding the appropriate balance.

As discussed above, the IRM states that a hearing officer must exercise discretion in determining whether to levy on a taxpayer's retirement income but does not tell the hearing officer how to exercise that discretion. 1 Administration, IRM (CCH), pt. 5.11.6.1(1), at 16,797 (June 29, 2001). Mr. Climan chose to exercise his discretion by examining whether a levy on petitioner's retirement income would cause economic hardship. Our problem with that determination arises from the method Mr. Climan used to analyze whether economic hardship would result from the levy.

Mr. Climan calculated petitioner's income as if petitioner would continue to have income from wages after he started to receive his pension. Specifically, Mr. Climan took petitioner's reported income (including wage income) from petitioner's 2005 Federal income tax return and divided the figure by 12 to arrive at an average monthly income figure. He then calculated petitioner's allowable expenses by extracting information from petitioner's 2003–2005 Federal income tax returns and consulting the applicable national and local standards. He then calculated petitioner's net monthly income by subtracting petitioner's average allowable monthly expenses from petitioner's average monthly income.

The problem that is readily apparent from this methodology is that Mr. Climan assumed petitioner would continue to work after he started to receive his pension income in November 2007. Mr. Climan did not assume in making his income calculations that petitioner would retire, and there is nothing in the administrative record to explain why he made that assumption. The administrative record contains no indication that petitioner would continue to work for compensation after November 2007. Without that information in the administrative record or, at a minimum, without some

evidence in the administrative record that the information was requested and not provided, we simply cannot evaluate whether the Appeals Office abused its discretion.

Petitioner suggests on brief that his $1,242 monthly pension payment has become a "lifeline" and that he will face economic hardship if he is denied this income stream. We are unwilling to dismiss petitioner's concern without some information in the administrative record to confirm that the hearing officer asked petitioner (1) whether he would continue to work for compensation after he started to receive his pension and (2) to submit financial information to show his financial situation as of November 2007 when he became entitled to his pension income.

We may under certain circumstances remand a case to the Commissioner's Appeals Office while retaining jurisdiction. See *Lunsford v. Commissioner*, 117 T.C. 183, 189 (2001). The resulting section 6330 hearing on remand provides the parties with an opportunity to complete the initial section 6330 hearing while preserving the taxpayer's right to receive judicial review of the ultimate administrative determination. *Drake v. Commissioner*, T.C. Memo. 2006–151, affd. 511 F.3d 65 (1st Cir. 2007). Because the administrative record is insufficient to enable us to properly evaluate whether the Appeals Office abused its discretion in determining that a levy on petitioner's pension income could proceed, we shall remand this case to enable the parties to clarify and supplement the administrative record as appropriate. [16]

## VI. *Conclusion*

We have considered the parties' remaining arguments and, to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit. For the reasons identified above, we will remand this case to the Appeals Office for further proceedings consistent with this Opinion.

---

[16] Respondent reserved objections to pars. 33 and 34 of the stipulation of facts, which relate to changes in petitioner's health that have occurred since the Appeals Office issued the notice of determination. On remand respondent should consider information offered by petitioner regarding his financial condition, including any information regarding his medical condition and costs that bear on his financial condition. We shall reserve ruling on respondent's objections until the Appeals Office's review on remand is completed and a supplemental notice of determination is issued.

To reflect the foregoing,

*An appropriate order will be issued.*