T.C. Memo. 2020-63

UNITED STATES TAX COURT

ROBERT J. PEACOCK AND BONITA B. PEACOCK, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11728-17.                           Filed May 19, 2020.

Frank Agostino, Phillip J. Colasanto, and Alec B. Schwartz, for petitioners.[1]

Marco Franco, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge: This deficiency case is before the Court on

respondent's motion to dismiss for lack of jurisdiction. The issue presented by

_____

[1] When this case was called from the calendar, Mr. Agostino and Mr. Colasanto were present in the courtroom as volunteer lawyers. They entered appearances on behalf of petitioner husband for purposes of arguing the motion before us, and we are thankful for their pro bono service. Mr. Schwartz subsequently filed an entry of appearance on behalf of petitioners.

[*2] respondent's motion is whether a remittance that petitioners made to respondent before the mailing of the notice of deficiency deprives us of jurisdiction.

FINDINGS OF FACT[2]

Petitioners resided in New Jersey when the petition in this case was filed. For taxable year 2013 they filed a joint Form 1040, U.S. Individual Income Tax Return, which included a Schedule C, Profit or Loss From Business. On the Schedule C they reported other expenses of $52,736.

Respondent selected petitioners' 2013 tax return for examination. On March 11, 2016, Revenue Agent (RA) Tania Malaga issued petitioners a 30-day letter and Form 4549-A, Income Tax Examination Changes (Unagreed and Excepted Agreed) (original report), proposing a full disallowance of petitioners' deduction for other expenses. This adjustment resulted in a proposed liability of

---

[2] We held an evidentiary hearing on respondent's motion in New York, New York, where the parties filed a first stipulation of facts with accompanying exhibits. At the hearing we heard testimony and received additional exhibits. These findings of fact are stated solely for the purpose of disposing of the motion and not as findings of fact on the merits of this case.

[*3] $8,590.42, which comprised a deficiency of $6,761, a section 6662(a)

accuracy-related penalty of $1,352.20, and interest of $477.22.[3]

On April 7, 2016, RA Malaga met with petitioner husband at the RA's

office. That same day she issued petitioners a "corrected" Form 4549-A

(corrected report), which proposed the same deficiency as the original report but

did not include an accuracy-related penalty. This change resulted in a proposed

liability of $7,192.43, which comprised the $6,761 deficiency and interest of

$431.43.

On April 8, 2016, petitioner husband hand-delivered to RA Malaga a check

for $7,192.43, payable to the U.S. Treasury.[4] Accompanying the check was a

four-page cover letter addressed to RA Malaga, along with a copy of the corrected

report. The first three pages of the cover letter contain allegations of fraud against

a stock exchange that appear to underlie petitioners' deduction for other expenses.

The fourth page of the cover letter states:[5]

---

[3] Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code) in effect for the year in issue.

[4] The memo section of the check contains two lines of handwritten
notations. The top line comprises a Social Security number and the word
"payment", and the bottom line reads: "2013 Federal Income Tax".

[5] We reproduce this excerpt as it appears in the exhibit we received into

(continued...)

**[*4]** Because our meeting yesterday was cut short due to time constraints, I request a follow up meeting to discuss how I may amend my 2013 US Tax Return to better and more accurately reflect the * * * Fraud Recovery Expenses that I claimed on Schedule C of my 2013 Return.

In the meantime, please find enclosed check no. 5324 dated today, April 8, 2016 in the amount reflected in your revised Form 4549-A [corrected report], revised yesterday, April 7, 2016.

**I do, however, respectfully disagree completely with your determination.**

I am working on completing IRS Form 12203-Request for Appeals Review, and will submit it to you under separate cover.

Thereafter respondent transferred petitioners' case to the Internal Revenue Service (IRS) Office of Appeals (Appeals). In an October 16, 2016, letter to the Appeals Officer assigned to petitioners' case, petitioner husband wrote:[6]

As of this writing, I have yet to hear from the IRS regarding my request for Appeals Review.

On April 8, 2016, I hand delivered to * * * [RA] Malaga check number 5324 in the amount of $7,192.43, along with my letter dated April 8, 2016 (enclosed). In that letter (page 4), I made it crystal clear that this payment was made in protest, and that I completely disagreed with the IRS determination.

---

[5](...continued)
evidence, including petitioner husband's bolding and underscoring of text for emphasis.

[6] See supra note 5.

[*5]     *     *     *     *     *     *     *

Please advise me of the status of my Appeals Review.  **I
request a face to face review**.

Notice of Deficiency and Tax Court Proceedings

On March 27, 2017, Appeals issued petitioners a notice of deficiency
determining a deficiency of $6,544.[7]  The Court received and filed the petition in
this case on May 24, 2017, and respondent subsequently filed an answer.  Several
weeks before the scheduled trial of this case, respondent moved to dismiss this
case for lack of jurisdiction.

During an evidentiary hearing on respondent's motion the parties offered,
and the Court received, several exhibits including an IRS account transcript for
petitioners' 2013 tax year.  The transcript shows that on April 8, 2016, respondent
recorded petitioners' $7,192.43 remittance as an "[a]dvance payment of tax owed"
with transaction code 640.  The transcript does not contain a corresponding
assessment of that amount, leaving a credit balance of $7,192.43 in petitioners'
account when respondent issued the notice of deficiency.

---

[7] This amount is slightly less than the corrected report's proposed
deficiency of $6,761 because the deficiency notice disallowed $51,291 of
petitioners' deduction for other expenses rather than $52,736.

**[*6]**                                   OPINION

The Tax Court is a court of limited jurisdiction, and we may exercise our jurisdiction only to the extent provided by Congress.  See sec. 7442; see also GAF Corp. & Subs. v. Commissioner, 114 T.C. 519, 521 (2000).  We have jurisdiction to redetermine a deficiency if a valid notice of deficiency is issued by the Commissioner and if a timely petition is filed by the taxpayer.  GAF Corp. & Subs. v. Commissioner, 114 T.C. at 521.

Respondent does not dispute the timeliness of the petition.  However, respondent contends that the notice of deficiency is invalid because the April 8, 2016, remittance extinguished the deficiency before the notice was issued. Petitioners argue that the remittance was not a payment but rather a deposit, which would preserve their right to petition this Court.  See Rev. Proc. 2005-18, sec. 4.02(2), 2005-1 C.B. 798, 799.

Section 6211(a) defines an income tax deficiency as the amount by which the tax imposed under the income or estate and gift tax provisions of the Code exceeds the excess of--

> (1) the sum of
>
> > (A) the amount shown as the tax by the taxpayer upon his return, * * * plus

**[*7]** (B) the amounts previously assessed (or collected without assessment) as a deficiency, over--

(2) the amount of rebates * * * made.

If a deficiency is paid in full by the taxpayer before a notice of deficiency is issued, this Court and others have held that there is no deficiency, such that the notice of deficiency is invalid and the Tax Court lacks jurisdiction. See Bendheim v. Commissioner, 214 F.2d 26 (2d Cir. 1954), aff'g a Memorandum Opinion of this Court dated June 29, 1954; McConkey v. Commissioner, 199 F.2d 892 (4th Cir. 1952); Estate of Crawford v. Commissioner, 46 T.C. 262 (1966); Walsh v. Commissioner, 21 T.C. 1063 (1954); Anderson v. Commissioner, 11 T.C. 841 (1948); see also Grubart v. Commissioner, T.C. Memo. 1981-101, aff'd without published opinion, 685 F.2d 424 (2d Cir. 1982). Conversely, this Court has held that we have jurisdiction if the Commissioner treats a remittance as a deposit and does not assess additional tax equal to the amount of the remittance before issuing the notice of deficiency. See Hyde v. Commissioner, T.C. Memo. 2011-131, 2011 Tax Ct. Memo LEXIS 129, at *9-*10; see also Baral v. United States, 528 U.S. 431, 439 n.2 (2000) ("[T]he taxpayer will often desire treatment of the remittance as a deposit * * * in order to preserve jurisdiction in the Tax Court, which depends

**[*8]** on the existence of a deficiency * * *, a deficiency that would be wiped out by treatment of the remittance as a payment.").

Enacted by Congress in 2004, section 6603(a) permits taxpayers to "make a cash deposit with the Secretary which may be used * * * to pay any tax imposed under subtitle A or B * * * which has not been assessed at the time of the deposit." See American Jobs Creation Act of 2004, Pub. L. No. 108-357, sec. 842, 118 Stat. at 1598. Section 6603(a) further provides that "[s]uch a deposit shall be made in such manner as the Secretary shall prescribe." For purposes of section 6601 (relating to interest on underpayments), a tax to which a deposit is applied shall be treated as paid on the date the deposit is made. Sec. 6603(b). Thus, the making of a deposit stops the running of interest on a deficiency.[8] See id.

Rev. Proc. 2005-18, supra, gives guidance in determining whether a remittance is considered a payment. According to Rev. Proc. 2005-18, sec.

---

[8] Before the enactment of sec. 6603, the Commissioner allowed taxpayers to make "deposits in the nature of a cash bond" to suspend the running of interest on a deficiency. See Rev. Proc. 84-58, sec. 3.02, 1984-2 C.B. 501, 502, superseded by Rev. Proc. 2005-18, 2005-1 C.B. 798. However, if the deposit exceeded the liability that was ultimately assessed, the balance was returned to the taxpayer without interest. Id. sec. 4.02(3), 1984-2 C.B. at 502.

Sec. 6603(d), in contrast, generally entitles a taxpayer to interest on a deposit that is returned to him "to the extent (and only to the extent)" it is "attributable to a disputable tax". A disputable tax is "the amount of tax specified at the time of the deposit as the taxpayer's reasonable estimate of the maximum amount of any tax attributable to disputable items." Sec. 6603(d)(2)(A).

[*9] 4.01(1), a taxpayer may make a deposit by remitting to the Commissioner a check or money order, accompanied by a written statement designating the remittance as a deposit. If a taxpayer makes a deposit and does not execute a waiver of restrictions on assessment and collection or otherwise agree to the full amount of a proposed deficiency at the end of an examination, the Commissioner will issue a notice of deficiency, and the taxpayer will have the right to petition this Court. See id. sec. 4.02(2).

Petitioners argue that petitioner husband properly designated the remittance as a deposit pursuant to section 6603 and Rev. Proc. 2005-18, supra. They further argue that respondent treated the remittance as a deposit before and after the issuance of the notice of deficiency, up until the filing of the motion to dismiss. Conversely, respondent asserts that petitioner husband designated the remittance as a payment and that respondent treated it as such. According to respondent, the issuance of the notice of deficiency was erroneous. We agree with petitioners for the reasons below.

I.      Designation of Remittance

Rev. Proc. 2005-18, sec. 4.01(1), states that a "taxpayer may make a deposit under section 6603 by remitting to the * * * appropriate office at which the taxpayer's return is under examination, a check or a money order accompanied by

[*10] a written statement designating the remittance as a deposit." Other than

requiring a "written statement" accompanying a check or money order, the

revenue procedure does not specify how a taxpayer may designate a remittance as

a deposit.[9]

Internal Revenue Manual (IRM) pt. 4.4.24.6.1 (July 31, 2014) instructs IRS

personnel to determine whether a remittance is a payment or section 6603 deposit.

According to the IRM:

> The determination is made by looking for a written statement from
> the taxpayer designating the type of remittance. Correspondence can
> include such statements as:
>
> a. "Stop Interest"
>
> b. "Pursuant to IRC 6603"
>
> c. "Rev. Proc. 2005-18"

---

[9] Rev. Proc. 2005-18, sec. 4.01(1), 2005-1 C.B. at 799, states that the written statement "also must include" the type(s) of tax, the tax year(s), and a statement "identifying the amount of and basis for the disputable tax." See supra note 8. Neither party argues that these requirements are prerequisites to designating a remittance as a deposit. Nor does respondent contend that petitioner husband's April 8, 2016, letter--which specified the tax type (Federal income tax), tax year (2013), and included a copy of the corrected report--failed to satisfy these requirements.

**[\*11]** Id. pt. 4.4.24.6.1(1). The IRM further states: "If there is no indication the remittance is a * * * [section] 6603 deposit, then the taxpayer is not entitled to * * * [section] 6603(d) interest." Id. pt. 4.4.24.6.1(2); see supra note 8.

Considering the IRM to be persuasive authority in this context,[10] we must decide whether petitioner husband's April 8, 2016, cover letter indicates that the remittance was a section 6603 deposit. In the cover letter petitioner husband expressed clear and complete disagreement with RA Malaga's determination. He also requested a followup meeting with RA Malaga and stated that he would submit a request for Appeals review under separate cover. Taken together, these statements reflect petitioner husband's clear desire to continue discussions with RA Malaga and, if necessary, take his case to Appeals.

According to respondent, petitioner husband designated the remittance as a payment rather than as a section 6603 deposit. In support of his argument respondent refers to the memo section of petitioner husband's check, on which he

---

[10] To be sure, the IRM does not have the force of law. Vallone v. Commissioner, 88 T.C. 794, 807-808 (1987). Nevertheless, the IRM can be persuasive authority, see Atchison v. Commissioner, T.C. Memo. 2009-8, and a review of relevant IRM provisions is instructive in ascertaining the procedures the IRS expects its employees to follow, see Wadleigh v. Commissioner, 134 T.C. 280, 294 n.13 (2010).

[*12] wrote "payment".[11]  Had the memo line of the check been the only written statement to accompany the remittance, we might agree with respondent.  In this case, however, petitioner husband included with the check a detailed cover letter expressing a desire to dispute the proposed deficiency before the IRS Examination Division and Appeals.

Respondent asserts that the cover letter merely expresses disagreement with RA Malaga's determination.  Respondent argues that an expression of disagreement "is not determinative of whether a remittance * * * [that satisfies] the underpayment in full should be treated as a payment or a deposit."  However, petitioner husband's letter did more than express disagreement.  It also requested another meeting with the RA and stated that a request for Appeals review was forthcoming.[12]  These statements are as indicative of a desire to dispute a liability

---

[11]  Respondent also refers to petitioner husband's description of the check as a "payment" in his October 16, 2016, letter to Appeals as evidence that he designated the remittance as a payment.  However, in the same sentence, petitioner husband wrote that he "made it crystal clear" that the delivery of the check to respondent was "in protest".  In any event the October 16, 2016, letter is not controlling, as it was not the written statement that "accompanied" petitioner husband's April 8, 2016, remittance to the IRS.  See Rev. Proc. 2005-18, sec. 4.01.

[12]  Petitioner husband referred to Form 12203 in his letter.  The IRM directs examination personnel to provide this form to certain taxpayers seeking Appeals review where the deficiency is $25,000 or less.  IRM pt. 4.19.13.15.2(2) (Jan. 1, 2016).  The IRM further directs examination personnel to refer certain cases to

(continued...)

**[\*13]** in prepayment forums as the term "Stop Interest", which the IRM deems sufficient to denote a remittance as a deposit under section 6603.[13] See IRM pt. 4.4.24.6.1(1). Accordingly, we hold that petitioner husband properly designated the remittance as a deposit under section 6603 and Rev. Proc. 2005-18, supra.[14]

## II. Treatment of Remittance

For the sake of completeness, we also consider whether respondent treated the remittance as a deposit. Respondent asserts that the remittance was at all times treated as a payment and that the mailing of the deficiency notice was erroneous. Petitioners contend that respondent treated the remittance as a deposit until the filing of the motion to dismiss.

---

[12](...continued)
Appeals if the taxpayer: (i) requests a transfer to Appeals, (ii) provides documentation during the examination along with a written request for Appeals review identifying the changes with which the taxpayer disagrees, and (iii) submits a completed Form 12203. See id.

[13] The IRM lists three examples of written statements that designate a remittance as a sec. 6603 deposit. See IRM pt. 4.4.24.6.1(1) (July 31, 2014). The phrase "Stop Interest" is one of those examples. Id. The use of one of the IRM's examples is not a prerequisite to a sec. 6603 deposit designation. See id. (stating that correspondence designating a remittance as a sec. 6603 deposit "can include such statements as * * * 'Stop Interest' * * * [,] 'Pursuant to IRC 6603' * * * [, or] 'Rev. Proc. 2005-18'"). Respondent cites no authority to the contrary.

[14] We therefore need not decide today whether a written expression of disagreement by itself is sufficient to indicate that a remittance is a sec. 6603 deposit.

**[\*14]** As stated above, the Commissioner will issue a notice of deficiency, and the taxpayer will have the right to petition this Court, if a taxpayer makes a deposit and does not execute a waiver of restrictions on assessment and collection or otherwise agree to the full amount of a proposed deficiency at the end of an examination.  See Rev. Proc. 2005-18, sec. 4.02(2).

Conversely, section 6213(b)(4) and section 301.6213-1(b)(3), Proced. & Admin. Regs., authorize the assessment of a "payment" received before the issuance of a notice of deficiency.  Any amounts assessed are "taken into account in determining whether or not there is a deficiency for which a notice of deficiency must be issued."  Sec. 301.6213-1(b)(3), Proced. & Admin. Regs.  Accordingly, "if such a payment satisfies the taxpayer's tax liability, no notice of deficiency will be mailed and the Tax Court will have no jurisdiction over the matter."  Id.

Rev. Proc. 2005-18, sec. 4.01(2), defines a remittance that is not designated as a deposit as an "undesignated remittance", which "will be treated as a payment" with exceptions not here relevant.  An undesignated remittance treated as a payment "will be posted to the taxpayer's account as a payment upon receipt, or as soon as possible thereafter, and may be assessed, provided that assessment will not imperil a criminal investigation or prosecution."  Id.  According to Rev. Proc. 2005-18, sec. 4.03, 2005-1 C.B. at 800:

**[*15]**     If [the taxpayer makes] an undesignated remittance * * * in the full amount of a proposed liability, such as an amount proposed in a revenue agent's or examiner's report, the undesignated remittance will be treated as a payment of tax, a notice of deficiency will not be mailed and the taxpayer will not have the right to petition the Tax Court for a redetermination of the deficiency.

In accordance with the revenue procedure the IRM instructs examination personnel who receive a payment without a signed waiver or agreement before the mailing of a notice of deficiency to "look for a statement that this constitutes an advance payment or evidence that the taxpayer intends to file a protest." IRM pt. 4.4.24.9 (July 31, 2014). The IRM further states that "[a]n advance payment received prior to issuance of a stat[utory] notice [of deficiency] is considered an agreement in lieu of a signed Form 870, Waiver of Restrictions on Assessment & Collection of Deficiency in Tax & Acceptance of Overassessment, up to the amount of the payment." Id.

Respondent's issuance of the notice of deficiency in this case indicates that IRS Examination and Appeals personnel viewed the April 8, 2016, remittance as a deposit. See Rev. Proc. 2005-18, sec. 4.02(2) and (3). It is undisputed that petitioners never signed a Form 870 or otherwise agreed to the proposed deficiency. Instead of treating the remittance as an agreement in lieu of a signed Form 870, respondent transferred petitioners' case to Appeals. Given the lack of a

**[*16]** corresponding assessment to the remittance on the IRS account transcript for petitioners' 2013 tax year, Appeals' subsequent mailing of the notice of deficiency to petitioners does not appear to have been unintentional. See sec. 301.6213-1(b)(3), Proced. & Admin. Regs. (authorizing the assessment of payments received before the mailing of a deficiency notice and providing that "the assessment is taken into account in determining whether or not there is a deficiency for which a notice of deficiency must be issued").

According to respondent, the account transcript's characterization of the remittance as an "advance payment of tax owed" demonstrates that he treated it as a payment. However, the transcript entry on which respondent relies bears the transaction code 640. With respect to section 6603 deposits, IRM pt. 20.2.4.8.2.1(1) (Mar. 5, 2015) states:

> Remittances submitted after October 22, 2004, identified as "6603 deposits" are processed and posted in the same manner as the IRS previously processed a cash bond remittance. Deposits are identified by TC [transaction code] 640 (Advance Payment of Determined Deficiency or Underreporter Proposal), Blocking Series "990-999," or TC 640 with Designated Payment Code (DPC) 12.

While the record does not specify the "Blocking Series" or "Designated Payment Code" assigned to petitioner husband's remittance, the use of transaction code 640 on the transcript is not inconsistent with the treatment of the remittance

**[*17]** as a deposit. Accordingly, we find respondent's reliance on the phrase "advance payment" unavailing. In any event the preponderance of the evidence establishes that the remittance was treated as a deposit given the lack of an assessment corresponding to the remittance and Appeals' issuance of the notice of deficiency.

III.    Conclusion

Petitioner husband properly designated the remittance as a deposit, respondent treated it as such, and the deficiency was never extinguished by a payment. Accordingly, the notice of deficiency in this case is valid, and we have jurisdiction.

We have considered all other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.