T.C. Memo. 2013-26

UNITED STATES TAX COURT

LAMAR D. POMEROY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

DIXIE L. POMEROY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 11640-11L, 11641-11L.      Filed January 22, 2013.

Ps filed petitions for review of a notice of Federal tax lien filing pursuant to I.R.C. sec. 6320 in response to R's determinations that the collection actions were appropriate.

<u>Held</u>: We exercise our discretion and remand these cases to IRS Appeals to clarify and supplement the record as the parties deem appropriate to consider P-H's medical condition.

<u>Warren Neil Nemiroff</u>, for petitioners.

<u>Nicole C. Lloyd</u>, for respondent.

[*2] MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, <u>Judge</u>: These consolidated cases are before the Court on petitions for review of Notices of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notices of determination).[1] Petitioners seek review of respondent's rejection of their offers-in-compromise and subsequent decision to sustain the collection action.

The collection action stems from unpaid income tax for petitioners' 2003, 2005, 2006, 2007, and 2008 taxable years. The issue for decision is whether respondent's settlement officer abused her discretion in rejecting petitioners' offers-in-compromise because she failed to consider petitioner husband's medical condition and because she determined the reasonable collection potential using future income projections greater than 48 months.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect at the relevant time.

[*3]                          FINDINGS OF FACT

Some of the facts have been stipulated.[2]  The stipulations, with accompanying exhibits, are incorporated herein by this reference except to the extent discussed below.  At the time the petition was filed, petitioners resided in Nevada.

Petitioners, LaMar and Dixie Pomeroy, are husband and wife, and both are retired.  They have a long history of noncompliance with Federal income tax responsibilities, with unpaid income tax liabilities for the years 1997 through 2009.  In addition, Mr. Pomeroy has unpaid liabilities for civil penalties for frivolous submissions assessed under section 6702(a) for the tax years 1999, 2000, 2003, and 2005.  Mrs. Pomeroy has unpaid liabilities for civil penalties for frivolous submissions assessed for tax years 1994, 1999, 2000, 2003, and 2005.  For tax years 1997 through 2003 and 2006, petitioners did not file income tax returns, and respondent prepared substitutes for returns under section 6020(b).

---

[2]The parties had until June 4, 2012, to submit simultaneous opening briefs and until July 19, 2012, to submit simultaneous answering briefs.  Respondent submitted an opening brief, but petitioners did not.  Respondent then filed a notice that he was not filing an answering brief.  Petitioners had ample time to file their own brief.  Because they did not, we conclude they have no objection to respondent's findings of facts, and we will accept them as correct to the extent consistent with the record.  See Jonson v. Commissioner, 118 T.C. 106, 108 n.4 (2002), aff'd, 353 F.3d 1181 (10th Cir. 2003); Bland v. Commissioner, T.C. Memo. 2012-84.

**[*4]** On May 25, 2010, respondent mailed petitioners a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under I.R.C. 6320 (NFTL). The NFTL informed petitioners that respondent filed a notice of tax lien for the following outstanding Federal income tax liabilities:

| Year | Liability |
|------|-----------|
| 2003 | $8,459.25 |
| 2005 | 1,617.04 |
| 2006 | 6,252.43 |
| 2007 | 3,679.21 |
| 2008 | 3,182.67 |

Petitioners timely mailed a Form 12153, Request for a Collection Due Process or Equivalent Hearing, to the Internal Revenue Service (IRS) Office of Appeals (Appeals), which that office received on or before June 14, 2010. Petitioners' representative, Warren Nemiroff, stated in the request that he objected to the filing of the tax lien on the grounds that it was excessive. Mr. Nemiroff also indicated his intention to file an offer-in-compromise. Settlement Officer Alex Lau initially was assigned to the case.

On August 16, 2010, respondent received petitioners' first Form 656, Offer in Compromise. On this form, petitioners sought to settle their income tax liabilities for tax years 1994, 1996 through 2000, 2002 through 2006, and

**[*5]** 2008[3] and civil penalties for frivolous returns for tax years 2002 through 2005. Petitioners stated that they sought the offer-in-compromise because of doubt as to collectibility. They offered to pay $25,000. Petitioners also submitted a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. On this form, along with reporting their assets, petitioners reported that Mr. Pomeroy received income of $5,097.12 per month from his pension and Social Security and that Mrs. Pomeroy received income of $140 per month from Social Security. Their total combined monthly income was $5,237. The offer-in-compromise was sent to respondent's centralized offer-in-compromise (COIC) unit for processing, but Appeals retained jurisdiction over the case.

In a letter dated September 5, 2010, the Memphis, Tennessee, COIC unit requested additional documentation substantiating the expenses and income petitioners reported on the Form 433-A. The COIC unit also requested that petitioners file separate Forms 656 because the original offer included individual liabilities for the frivolous return civil penalties. According to the COIC unit, Mr. Pomeroy's outstanding liabilities for frivolous return penalties were for the 1999,

---

[3]This Form 656 did not include the 2007 tax year, one of the years that was the subject of the NFTL.

[*6] 2000, 2003, and 2005 tax years, while Mrs. Pomeroy's liabilities for frivolous return penalties were for 1994, 1999, 2000, 2003, and 2005. Petitioners submitted the requested revised Forms 656. Mrs. Pomeroy's revised form listed "Other Federal Tax(es)" for 1994, 1999, 2000, 2003, and 2005 but did not list income tax liabilities. Mr. Pomeroy's revised form listed "Other Federal Tax(es)" for 1999, 2000, 2003, and 2005, and income tax for 1997 through 2009. Neither form stated the offer amount.

On September 29, 2010, Mr. Nemiroff sent a letter to the COIC unit enclosing substantiation requested in the September 5 letter and the revised Forms 656. In this letter, Mr. Nemiroff also stated: "Mr. Pomeroy has suffered a stroke and is near death. This is a case that needs attention, and care. Please move with alacrity."

On November 29, 2010, Mrs. F. Williams, the offer examiner at the COIC unit, sent each petitioner a letter. The letters asked each petitioner to submit yet a third Form 656 and asked for additional information and substantiation. The third forms were to include the offer amount, type of offer, or offer terms, as well as to identify all outstanding tax liabilities by year that each petitioner was seeking to compromise. In addition, the letter to Mr. Pomeroy stated: "If you would like for your medical condition to be considered while your offer is being reviewed, please

[*7] provide a current medical prognosis and diagnosis from your doctor verifying your medical condition and explaining how your medical condition affects you." The letter to Mrs. Pomeroy contained similar language in the event that she had a medical condition she wished to have considered. Mrs. Williams also informed petitioners that if they did not provide the requested information by December 13, 2010, the "offer may be returned or rejected".

Mrs. Williams did not receive a response, and on or about December 21, 2010, she decided to return the case to Appeals. The COIC unit's determination was that petitioners could fully pay the remaining total liability of $107,919.01 over the remaining period of collections. Her determination was based on the amount of petitioners' income from pension and social security and petitioners' expenses, both as reported and as determined using a local standard.[4] The following table reflects what petitioners reported on their Form 433-A and what Mrs. Williams determined:

|  | Form 433-A | Per COIC |
|---|---|---|
| Monthly Income: |  |  |
| Mr. Pomeroy (pension and Social Security) | $5,097.12 | $5,288.21 |
| Mrs. Pomeroy (Social Security) | 140.00 | 237.20 |
| Monthly Expenses: |  |  |
| Food/Clothing/Miscellaneous[1] | (720.00) | (1152.00) |

---

[4]Because Mrs. Williams determined that petitioners could fully pay their liabilities with future income, she did not calculate the equity in their assets.

| | | |
|---|---|---|
| [*8]  Housing/Utilities | (2,355.00) | (1,439.00) |
| Vehicle Operating Costs | (983.00) | (872.00) |
| Health Insurance | (468.00) | (431.00) |
| Out-of-Pocket Health Care Costs | (100.00) | (288.00) |
| Life Insurance | (180.00) | (197.08) |
| Net Total | 431.12 | 1,146.33 |

[1]Petitioners claimed a household size of three because they were supporting their adult daughter.  Mrs. Williams accepted this claim and calculated the expenses using the national standards for a household of three.

Because Mrs. Williams determined that the remaining statutory periods of collection for Mr. and Mrs. Pomeroy's liabilities were 118 months and 116 months respectively, she determined that Mrs. Pomeroy could pay a total of $132,974.28 and Mr. Pomeroy could pay a total of $135,266.94, each of which exceeded the total liability.  Petitioners submitted a third set of Forms 656 in mid-December of 2010.  On her form, Mrs. Pomeroy listed income tax for years 1997 through 2009, and "Trust Fund Recovery Penalty" for 1994, 1999, 2000, 2003, and 2005.[5]  Mr. Pomeroy's form listed the same years for income tax liabilities and listed the 1999, 2000, 2003, and 2005 tax years for liabilities due to trust fund recovery penalties.  Each form offered to pay $12,500.  Mrs. Pomeroy also provided a letter stating

---

[5]Evidently, COIC prepared the forms for petitioners.  Why the forms list petitioners as having trust fund recovery penalties as opposed to civil penalties for frivolous submissions is unclear.  We note also that apparently because of a typographical error the form, as to the trust fund recovery penalty, refers to "1999412" instead of "199412" with the "12" referring to the taxable year ending in December.

**[\*9]** that Mr. Pomeroy had suffered a serious stroke and was undergoing inpatient therapy.  Mrs. Pomeroy indicated that she had asked the doctor for a prognosis and diagnosis but was not sure she would get it in time to send.  This letter, along with the third set of Forms 656, apparently did not reach the COIC unit until after Mrs. Williams decided petitioners could fully pay, but the forms and the letter were forwarded to Appeals.

The new settlement officer assigned to the case, Elizabeth Coppola, reviewed the COIC unit's determination to reject petitioners' offers-in-compromise.  During this review, Ms. Coppola approved Mrs. Williams' calculations with respect to monthly income and expenses and the projection of petitioners' monthly income over the remaining period of limitations on collection.  Ms. Coppola also reviewed the additional information forwarded to Appeals.  She decided, on the basis of her review of all the information petitioners submitted, to reject the offers-in-compromise and sustain the filing of the Federal tax lien.  On March 29, 2011, Ms. Coppola called Mr. Nemiroff, who said that he had just arrived at his office and asked if he could call her back.  Ms. Coppola agreed but requested that the return call be no later than 3:45 p.m. the same day.  Ms. Coppola sent Mr. Nemiroff a fax confirming this request and stating that she had reviewed all of petitioners' information and was sustaining the rejection of the

**[*10]** offers-in-compromise and the filing of the tax lien. The fax further stated that if Mr. Nemiroff did not contact her by 3:45 p.m., she was closing the case. Mr. Nemiroff never returned the phone call.

On April 12, 2011, respondent issued the notices of determination memorializing Ms. Coppola's determinations. Petitioners timely petitioned this Court for review, and a trial was held in Los Angeles, California, on March 21, 2012. At the trial, the Court granted petitioners' oral motion to consolidate the cases for trial, briefing, and opinion.

## OPINION

I.      Evidentiary Issue

Respondent objects to one of the stipulations and its accompanying exhibit on the grounds of relevancy because it was outside the administrative record. This exhibit was a letter from Mr. Pomeroy's doctor briefly describing his medical condition. The letter was dated January 28, 2012, long after the administrative record was closed.

We follow the law of the Court of Appeals for the Ninth Circuit, to which these cases, absent a stipulation to the contrary, are appealable. See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971). That Court of Appeals has limited the review of the administrative determinations

**[*11]** in collection due process hearings to the administrative record. See <u>Keller v. Commissioner</u>, 568 F.3d 710, 718 (9th Cir. 2009) ("our review is confined to the record at the time the Commissioner's decision was rendered"), <u>aff'g in part</u> T.C. Memo. 2006-166. Because the letter was not in the administrative record at the time Ms. Coppola made her determination, we sustain respondent's objection.

II. <u>Standard of Review</u>

Section 6330(c)(2)(B) permits challenges to the existence or amount of the underlying liability in collection proceedings only where the taxpayer did not receive a notice of deficiency or otherwise have an opportunity to challenge the liability. If the validity of the underlying tax liability is not properly at issue, we will review the Commissioner's administrative determination for abuse of discretion. <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). However, where the validity of the underlying tax liability is properly at issue, the Court will review the matter de novo. <u>Id.</u>

In their petitions, petitioners asserted: "All taxes, penalties and interest, resulting from same, are in dispute." Respondent counters on brief: "Petitioners, however, never raised the issue [of the validity of the liabilities] in their pre-trial memorandums nor argued the issue at trial." We further note that petitioners did not file a posttrial brief. As petitioners neither presented evidence as to the issue

[*12] of the underlying tax liabilities nor pursued the issue at trial, we deem the argument as to the underlying liabilities conceded. See Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989). Thus, abuse of discretion is the appropriate standard of review here.

III.     Review for Abuse of Discretion

Section 6320(a) and (b) requires the Commissioner to notify a taxpayer in writing upon the filing of a notice of Federal tax lien and to provide the taxpayer with an opportunity for an administrative hearing. An administrative hearing under section 6320 is conducted in accordance with the procedural requirements of section 6330. Sec. 6320(c).

If an administrative hearing is requested, the hearing is to be conducted by Appeals. Sec. 6320(b)(1). At the hearing, the Appeals officer conducting it must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1). The taxpayer may raise any relevant issue with regard to the Commissioner's intended collection activities, including spousal defenses, challenges to the appropriateness of the proposed collection actions, and alternative means of collection. Sec. 6330(c)(2)(A); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. at 180. Taxpayers are expected to provide all relevant information requested by Appeals,

[*13] including financial statements, for its consideration of the facts and issues involved in the hearing. Sec. 301.6320-1(e)(1), Proced. & Admin. Regs.

Among the issues that may be raised at Appeals are "offers of collection alternatives", such as offers-in-compromise and installment agreements. Sec. 6330(c)(2)(A)(iii). The Court reviews the Appeals officer's rejection of an offer-in-compromise or an installment agreement to decide whether the rejection was arbitrary, capricious, or without sound basis in fact or law and therefore an abuse of discretion. Skrizowski v. Commissioner, T.C. Memo. 2004-229; see also Keller v. Commissioner, 568 F.3d at 716 (a decision based on an erroneous view of the law or a clearly erroneous assessment of facts is an abuse of discretion).

Section 7122 establishes the authority of the Secretary to compromise tax liabilities. The IRS may compromise a taxpayer's liability on the grounds of doubt as to liability, doubt as to collectibility, or effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs. Whether an offer is accepted or rejected is left to the discretion of the IRS. Sec. 301.7122-1(c)(1), Proced. & Admin. Regs.

Petitioners sought to compromise their tax liabilities on the basis of doubt as to collectibility. Ms. Coppola determined that petitioners could fully pay their liabilities over the time remaining in the statutory period of collection. Sec. 6502(a). Petitioners claim that the Appeals officer abused her discretion by

**[\*14]** computing their ability to fully pay using projected future income over the remaining statutory period of collection instead of following the guidelines in the Internal Revenue Manual (IRM).[6]

The IRM limits Appeals officers to 48 months in computing future income when evaluating offers-in-compromise and the offer is payable in five months or less. IRM pt. 5.8.5.23(2)(A) (Oct. 22, 2010). But in general, a settlement officer will not accept an offer-in-compromise where the taxpayer can fully pay the liability. Id. pt. 5.8.1.1.3(2) (Mar. 16, 2010). To determine whether a taxpayer can fully pay, the Appeals officer makes a computation to determine whether the taxpayer can pay under an installment plan, using the entire period afforded by the statute of limitations for collections. Id. pt. 5.8.5.2(2) (Oct. 22, 2010) (instructing offer evaluators to first determine whether "the taxpayer can full pay through installment agreement guidelines"). In making this determination, the officer projects future income over the course of the period of limitations, not just 48 months. Id. pt. 5.8.1.1.3(2). Thus, in these cases Ms. Coppola did not abuse her discretion in projecting future income over the remaining period.

---

[6]We note that petitioners' counsel raised this issue during a pretrial hearing. We then asked respondent to address the issue, which respondent did on brief.

**[*15]** Petitioners also claim that Ms. Coppola abused her discretion by not considering Mr. Pomeroy's medical condition. This argument appears to be premised on the idea that once Appeals had determined petitioners were able to fully pay the liabilities, Appeals should have considered adjusting income or allowable expenses for life expectancy and/or anticipated medical expenses, respectively, and also considered the offers-in-compromise under the promotion of effective tax administration guidelines.[7]

The regulations discuss two scenarios under which the promotion of effective tax administration can be grounds for compromise: (1) if full collection "would cause the taxpayer economic hardship," and (2) if there are "compelling public policy or equity considerations". Sec. 301.7122-1(b)(3)(i) and (ii), Proced. & Admin. Regs. Economic hardship exists where the taxpayer would "be unable to pay his or her reasonable basic living expenses." Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. To determine basic living expenses, the IRS looks at

---

[7]Petitioners may also be arguing that they qualify for offers-in-compromise under doubt as to collectibility with special circumstances. To qualify for offers on such grounds, petitioners must show not only that they are unable to fully pay the liabilities, but also that they have special circumstances that justify settling the liabilities for less than the reasonable collection potential. Internal Revenue Manual pt. 5.8.4.2(3) (June 1, 2010). The factors establishing special circumstances are the same as those establishing effective tax administration. Id. pt. 5.8.4.2(4).

**[*16]** various factors including age, employment status and history, dependents, reasonably necessary expenses, cost of living, extraordinary circumstances, and other factors raised by the taxpayer. Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs. Public policy or equity considerations provide a basis for compromise "only where, due to exceptional circumstances, collection of the full liability would undermine public confidence that the tax laws are being administered in a fair and equitable manner." Sec. 301.7122-1(b)(3)(ii), Proced. & Admin. Regs. (emphasis added). But in both scenarios, compromise is not appropriate if it "would undermine compliance by taxpayers with the tax law." Sec. 301.7122-1(b)(3)(iii), Proced. & Admin. Regs.

The regulations also identify several factors helpful, but not conclusive or exclusive, in determining whether an offer should be accepted under the effective tax administration grounds and whether acceptance would undermine confidence in the tax laws. Sec. 301.7122-1(c)(3), Proced. & Admin. Regs. Such factors include a taxpayer's long-term illness or medical condition that prevents the taxpayer from earning a living and the reasonable foreseeability "that taxpayer's financial resources will be exhausted providing for care and support during the course of the condition". Sec. 301.7122-1(c)(3)(i)(A), Proced. & Admin. Regs. At the same time, a "history of noncompliance with the filing and payment

**[*17]** requirements of the Internal Revenue Code" indicates that acceptance of the offer would tend to undermine compliance with the tax laws. Sec. 301.7122-1(c)(3)(ii)(A), Proced. & Admin. Regs.

The crux of petitioners' argument appears to be that Mr. Pomeroy's medical condition qualified them for offers-in-compromise based on effective tax administration even though they submitted the offers under doubt as to collectibility grounds. Indeed, IRM pt. 5.8.11.4(3) (Sept. 23, 2008) states that, for offers submitted as doubt as to collectibility offers, the settlement officer should also consider the offer as an effective tax administration offer if special circumstances exist even if the collection potential exceeds the liability. Petitioners point to numerous instances in the record to show that Appeals was well aware of Mr. Pomeroy's stroke and should have considered the offers as effective tax administration offers once it determined that petitioners could fully pay the liabilities.

After initially denying that petitioners had informed Appeals of Mr. Pomeroy's stroke, respondent now admits that the record does indeed contain several references. Now respondent contends that Appeals did consider, to the extent that it could, Mr. Pomeroy's medical condition. In evaluating an offer based on effective tax administration, IRM pt. 5.8.11.5(1)(A) (Sept. 23, 2008)

[*18] instructs the settlement officer to "[r]equest supporting documentation of the taxpayer's situation", such as "a doctor's letter or copies of medical expenses." Mrs. Williams' November 29, 2010, letter stated that if petitioners wanted her to consider Mr. Pomeroy's medical condition they needed to submit verification in the form of a diagnosis and prognosis from a doctor by December 13, 2010. Mrs. Pomeroy wrote a letter in response, which unfortunately is not dated and does not have a date-received stamp. In this letter, she told Mrs. Williams that she was trying to get the letter from the doctor and that her husband was still at an in-patient facility.[8] Petitioners were in the process of obtaining the requested verification, but Mrs. Coppola made her determination and closed the case before they were able to procure the documentation.

Petitioners alerted respondent numerous times that Mr. Pomeroy was gravely ill. The administrative record reflects that Appeals was not only aware that Mr. Pomeroy had suffered a stroke, which could very well have a drastic effect on petitioners' medical expenses, but it was also aware that Mrs. Pomeroy was in the process of trying to get a letter from a physician. Mrs. Williams gave petitioners only 10 business days, between the November 29, 2010, date of the

--------

[8]As Mrs. Pomeroy testified at trial: "[W]hen you have a family member that is almost on their death bed, it gets kind of hard to do everything[.]"

[*19] letter and the December 13, 2010, deadline, to obtain a prognosis or diagnosis from a doctor.[9] Ms. Coppola appears to have done no more than rely on the record as developed by Mrs. Williams and does not appear to have made an appropriate effort to obtain sufficient information from petitioners. In fact, Ms. Coppola appears to have made only one effort to contact petitioners or their counsel, and that one effort was the same day she closed the case. She made no attempt to ascertain the current status of Mr. Pomeroy's health or Mrs. Pomeroy's attempt to obtain a diagnosis or prognosis.[10] Without more information about Mr. Pomeroy's medical condition, the administrative record is insufficient for the Court to properly review it.

In such cases, we can remand collection due process cases to Appeals to develop the record. See Wadleigh v. Commissioner, 134 T.C. 280, 299 (2010) (remanding "to clarify and supplement the administrative record" when we determined that the administrative record was "insufficient to enable us to properly evaluate whether the Appeals Office abused its discretion"); Hoyle v.

---

[9]As a practical matter, petitioners would have had less than 10 business days, as the letter presumably took some time to travel from Tennessee to Nevada and any response would take some time to travel back from Nevada to Tennessee.

[10]We note that at the time of the trial, Mr. Pomeroy was still at the rehabilitation facility and had recently broken his hip.

**[\*20]** <u>Commissioner</u>, 131 T.C. 197, 204-205 (2008) (remanding so that Appeals could clarify the record as to why it determined that all requirements of applicable law were met). Accordingly, we remand these cases to the Appeals Office to allow the parties to clarify and supplement the record as appropriate. We will retain jurisdiction to preserve petitioners' rights to judicial review of the final administrative determination. <u>See</u> <u>Wadleigh v. Commissioner</u>, 134 T.C. at 299.

The Court has considered all of petitioners' contentions, arguments, requests, and statements. To the extent not discussed herein, the Court concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order</u>

<u>will be issued</u>.