T.C. Memo. 2014-176

UNITED STATES TAX COURT

ELADIO DUARTE AND AZUCENA BAILON-RIVAS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1851-12L.                    Filed August 28, 2014.

<u>Eric William Johnson</u>, for petitioners.

<u>Jeremy J. Eggerth</u> and <u>John Schmittdiel</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, <u>Judge</u>:  Pursuant to section 6330(d),[1] Mr. Duarte seeks review of the

IRS' determination to sustain the proposed levy action and the filing of a notice of

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  All monetary amounts are rounded to the
nearest dollar.

[*2] Federal tax lien. The issue for decision is whether the IRS abused its discretion in rejecting Mr. Duarte's offer-in-compromise. Because the rationale underlying the IRS' determination is unclear and at times contradictory we will remand this case for further consideration.

FINDINGS OF FACT

Mr. Duarte is a Mexican immigrant whose native language is Spanish. He is the sole breadwinner for his immediate family, and he also helps to support his parents in Mexico.[2] During the years at issue Mr. Duarte owned and operated a roofing business. Mr. Duarte's business income fluctuated both with the change of the seasons and as a result of any significant storms that gave rise to the need to repair or replace roofs. Mr. Duarte often moved his business and his family to find work, but he would sometimes go months without work.

In 2005 Mr. Duarte tried to buy a house and discovered that he had outstanding income tax liabilities and had failed to file tax returns. For the 2001 through 2004 tax years the IRS prepared substitutes for return and issued notices of deficiency. Mr. Duarte worked with a tax return preparer to become current

---

[2]Although the underlying liabilities at issue are joint liabilities and the collection actions are against both Mr. Duarte and Mrs. Bailon-Rivas, we refer solely to Mr. Duarte for convenience because he and his business are the sole source of income giving rise to the liabilities and the calculation of his collection potential.

[*3] with his personal and business tax return filing requirements. He submitted personal returns for 2003 and 2004, and respondent abated portions of the outstanding tax liabilities for those years. For 2006 Mr. Duarte timely filed a return and reported a tax liability.

Collection

In May 2009 respondent issued a Final Notice of Intent to Levy and Notice of Your Right to a Hearing (notice of intent to levy) to Mr. Duarte for his 2001 through 2004 and 2006 tax liabilities. In response to the notice of intent to levy, Mr. Duarte's counsel mailed to respondent a Form 12153, Request for a Collection Due Process or Equivalent Hearing, for the 2001 through 2006 tax years, and on that form he requested an installment agreement or an offer-in-compromise. On July 28, 2009, respondent issued to Mr. Duarte a Notice of Federal Tax lien Filing and Your Right to a Hearing Under IRC 6320, for his 2001 through 2004 and 2006 income tax liabilities. A few days later, respondent levied on Mr. Duarte's bank account. Indeed, it appears there were multiple levies in late July and early August 2009 despite the IRS' having received Mr. Duarte's request for a hearing on June 26, 2009. The IRS' own records show that Mr. Duarte's counsel requested release of the levied funds. The account transcript shows that a portion

**[*4]** of the levied funds was applied to Mr. Duarte's 2001 tax liability, and it does not appear that all of the levies were released.

On August 27, 2009, Mr. Duarte's counsel mailed to respondent another Form 12153 for the 2001 through 2006 tax years requesting an installment agreement or an offer-in-compromise. Three months later, the IRS sent Mr. Duarte an acknowledgment letter from an Appeals Office in Kentucky scheduling a telephone hearing. Mr. Duarte's counsel requested additional time to gather documents from his client and to prepare a balance sheet for the business. He also requested a face-to-face hearing so that Mr. Duarte could bring his documents. Mr. Duarte's counsel believed that having all of the parties in the same room would facilitate his client's understanding and provide a better picture of Mr. Duarte's financial situation.

The Appeals officer agreed to an extension and to a face-to-face hearing near Mr. Duarte's residence on the condition that he provide her with a 2005 Form 1040, U.S. Individual Income Tax Return (her records showed one had not been filed), and a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. Mr. Duarte provided an original signed 2005 Form 1040 and the collection information statement. The Appeals officer agreed that

**[*5]** Mr. Duarte was in filing compliance and forwarded the case for a face-to-face hearing in Milwaukee, Wisconsin.

The IRS sent Mr. Duarte a letter scheduling a face-to-face hearing for March 2010 in the Milwaukee Appeals Office. Before the hearing Mr. Duarte's counsel provided the IRS with a copy of an offer-in-compromise and copies of his personal and business returns for the three most recent years (2007 through 2009), and the newly assigned Appeals officer determined that Mr. Duarte was in filing compliance. During the hearing Mr. Duarte provided the original offer-in-compromise and a Spanish-language collection information statement. Mr. Duarte also provided substantiation for his income and expenses, including more than six months of bank records plus records showing approximately $25,000 in hospital bills. Mr. Duarte offered to compromise his 2001 through 2006 tax liabilities for $30,000 and submitted with his offer a $6,000 cashier's check for a 20% lump-sum payment and a check for the $150 application fee.[3] The Appeals officer agreed that the offer-in-compromise was processible and that she had all the information she needed from Mr. Duarte. However, from April 9, 2010, until

---

[3]Both the $6,000 cashier's check and the $150 application fee were applied towards Mr. Duarte's 2002 income tax liability.

**[\*6]** August 8, 2011, respondent neither contacted Mr. Duarte nor processed the offer-in-compromise.

On August 8, 2011, Settlement Officer Diamantopoulos sent a letter to Mr. Duarte scheduling a telephone conference, requesting a new collection information statement for Mr. Duarte and his business, requesting copies of Mr. Duarte's personal and business returns for 2010, and requesting proof of estimated tax payments for 2011. Mr. Duarte's copy of that letter was returned to the IRS as undeliverable, but Mr. Duarte's counsel received a copy under his power of attorney. As of the date of that letter Mr. Diamantopoulos had already verified that Mr. Duarte's 2010 business return had been timely filed and that Mr. Duarte's account transcript showed a timely payment with his 2010 personal tax return.[4] Mr. Diamantopoulos was confused by the codes on the transcript that showed the timely payment with his personal return because no other return information was included on the transcript.

Mr. Duarte's counsel contacted Mr. Diamantopoulos and informed him that he was trying to find his clients to get the requested documentation and an updated power of attorney to include the 2010 and 2011 tax years. After he found his

---

[4]The unsigned copy of the Duartes' 2010 personal return showed a tax due of $913. The timely payment with the personal return reflected on the account transcript is $913.

**[\*7]** clients, Mr. Duarte's counsel notified Mr. Diamantopoulos of Mr. Duarte's updated address.

Shortly before the scheduled telephone call, Mr. Duarte's counsel received the updated power of attorney and unsigned personal and business returns for 2010. During the call Mr. Diamantopoulos indicated that according to the documents submitted during the face-to-face hearing in March 2010, Mr. Duarte could fully pay the liabilities. Mr. Duarte's counsel disagreed, noting that Mr. Duarte's business had no market value beyond the income Mr. Duarte reported on his returns. Mr. Duarte's counsel requested additional time to provide updated financial information and an opportunity for a face-to-face hearing so that Mr. Duarte could travel to the hearing and bring his updated financial records, copies of his 2010 returns, and provide an explanation of his financial situation orally because of his language barrier. Mr. Diamantopoulos stated that no extension or face-to-face hearing would be provided because Mr. Duarte had previously had a face-to-face hearing and because Mr. Diamantopoulos did not speak Spanish. Mr. Diamantopoulos summarily stated that the offer-in-compromise would be rejected based on his calculation that Mr. Duarte could fully pay the liabilities. Further, and despite having apparently reached the conclusion that he did not have up-to-

[*8] date financial information, Mr. Diamantopoulos offered Mr. Duarte an installment agreement for $3,000 per month.

On the day after the phone call, Mr. Diamantopoulos sent a letter to Mr. Duarte stating that, according to his calculation of the financial information Mr. Duarte had provided at the previous face-to-face hearing more than a year before, he could fully pay the liabilities and that Mr. Diamantopoulos was recommending that the offer-in-compromise be rejected.  He included his worksheets with that letter and stated that a notice of determination would be issued.[5]  In December 2011 respondent issued two notices of determination that sustained the lien and the levy because the Duartes could fully pay, they had not provided their 2010 personal return, and they had not provided proof of any required estimated tax payments for 2011.

Tax Court

Mr. Duarte's counsel timely filed a petition disputing the notices of determination and requesting the case be remanded to the Appeals Office. Respondent filed a motion for summary judgment (and an amendment and a supplement to his amendment), which the Court denied because questions of fact

_____

[5]This appears to be the first and only time respondent provided any calculation of the value of Mr. Duarte's business or his reasonable collection potential.

[*9] remained regarding whether the Duartes had timely filed their 2010 personal tax return and regarding Mr. Duarte's collection potential.

At trial Mr. Duarte testified that his tax return preparer mailed him the completed 2010 personal return to sign and return with a check for $913.  Usually, his tax return preparer would send him completed returns with instructions about making payments by check.  Sometimes Mr. Duarte would mail them directly to the IRS, and sometimes he would mail them back to his tax return preparer for filing.  Mr. Duarte did not know whether his tax return preparer intended to mail or electronically file the 2010 personal return.  The account transcript shows a timely "payment with return" of $913, but respondent's counsel insists no such return was filed.  Nonetheless, respondent's witness was uncertain whether a return had been filed.

## OPINION

Section 6321 provides that if any person liable to pay any tax neglects or refuses to do so after demand, the amount gives rise to a lien in favor of the United States on all property and rights to property, whether real or personal, belonging to that person.  Section 6323 authorizes the Commissioner to file a notice of Federal tax lien.  Pursuant to section 6320(a), the Commissioner must provide the taxpayer

**[*10]** with notice of and an opportunity for an administrative review of the propriety of the filing of the lien notice.

Section 6331(a) provides that if any person who is liable to pay any tax neglects or refuses to pay it within 10 days after notice and demand for payment, then the Commissioner may collect the tax by levying on that person's property. Section 6331(d) provides that, at least 30 days before enforcing collection by way of a levy, the Commissioner must provide the taxpayer with a final notice of intent to levy, including notice of the administrative appeals available to the taxpayer. If the taxpayer timely requests a hearing, section 6330(e)(1) suspends a levy action until the conclusion of the hearing and any judicial review.

Where the validity of the underlying tax liability is properly at issue, we review the Commissioner's determination de novo; where the validity of the underlying tax liability is not properly at issue, we review the Commissioner's administrative determination for abuse of discretion.[6] Taxpayers may prove an abuse of discretion by showing that the Commissioner exercised his discretion arbitrarily, capriciously, or without sounds basis in fact or law.[7] Here, the validity

---

[6]Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

[7]See Giamelli v. Commissioner, 129 T.C. 107, 111 (2007).

**[*11]** of the underlying tax liabilities is not at issue, so we review the IRS' collection actions for abuse of discretion.

The record reflects and respondent acknowledged that Mr. Duarte was in filing compliance and that he had provided all necessary financial information for the offer-in-compromise to be processed at the time of the first hearing. It is not clear from the record why that offer-in-compromise was not processed for over a year or how (or whether) the first settlement officer determined Mr. Duarte's reasonable collection potential. Even after trial, it remains unclear whether Mr. Duarte was in filing compliance at the time of the second hearing or why Mr. Diamantopoulos determined Mr. Duarte was not in filing compliance when, even at trial, the IRS witness remained uncertain on this point. Mr. Diamantopoulos offered an installment agreement based on admittedly out-of-date financial information. His basis for relying on information that he, himself, had considered to be out-of-date is unclear.

The Court can remand a case to the Appeals Office to clarify and supplement the administrative record as appropriate.[8] We remand a case to Appeals when the taxpayer did not have a proper hearing and a further hearing is

---

[8]See Wadleigh v. Commissioner, 134 T.C. 280, 299 (2010).

[*12] necessary or will be productive.[9] The hearing on remand provides the parties with the opportunity to complete the initial hearing while preserving the taxpayer's right to receive judicial review of the supplemental determination.[10] On this record, we cannot conclude whether respondent abused his discretion in rejecting the offer-in-compromise and sustaining both the lien and the levy. Therefore, we remand this case to the Appeals Office to conduct a further hearing and to issue a supplemental notice of determination.

To reflect the foregoing,

An appropriate order will be issued.

---

[9]Lunsford v. Commissioner, 117 T.C. 183, 189 (2001).

[10]See Hoyle v. Commissioner, 136 T.C. 463, 468 (2011); Kelby v. Commissioner, 130 T.C. 79, 86 (2008).